United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CALEB ALEXANDER RANNEY,<br>Defendant. | Case No. 25-cr-00416-TSH-1<br><br>**ORDER RE: MOTIONS FOR LEAVE TO FILE MOTION FOR RECONSIDERATION (PUBLIC VERSION OF ECF NO. 161)**<br><br>Re: Dkt. Nos. 112, 129 |

## I. INTRODUCTION

The United States Attorney's Office (the "Government") charged Defendant Caleb Alexander Ranney with two criminal offenses: (1) Assault on a Federal Officer (violation of 18 U.S.C. § 111(a)(1)); and (2) Destruction of Government Property (violation of 18 U.S.C. § 1361). ECF No. 1. The case is set to proceed to jury trial on October 5, 2026. ECF No. 116. Pending before the Court is Ranney's Motion for Leave to File Motion for Reconsideration and Motion for Reconsideration (ECF No. 112) ("Def.'s Mot."), and the Government's Motion for Leave to File Motion for Reconsideration (ECF No. 129) ("Gov't's Mot.") and Motion for Reconsideration (ECF No. 130-2).[1] The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS** Ranney's Motion for Leave to File Motion for Reconsideration, **GRANTS IN PART and DENIES IN PART** Ranney's Motion for Reconsideration, and **DENIES** the Government's Motion for Leave to File Motion for Reconsideration.

[1] The Government filed its Motion for Reconsideration under seal. *See* ECF No. 130-2. The Government filed a redacted version of the Motion on the public docket. *See* ECF No. 129-1.

## II. BACKGROUND

### A. Factual Background

Ranney is charged by information with two misdemeanor counts: assault on a federal officer and destruction of government property. ECF No. 1. Both charges stem from the interaction between federal officers and protestors on August 8, 2025, outside the immigration court at 630 Sansome Street in San Francisco, California.

The pending Motions concern the Court's Order on Ranney's Motion to Dismiss Under *Brady v. Maryland* (ECF No. 94). *See* ECF No. 111 (the "MTD Order"). In that Order, the Court denied Ranney's Motion to Dismiss and continued the trial. MTD Order at 5–6. The Court found that the Government committed a *Brady* violation and that the violation was ongoing. *Id.* at 5–6, n.1. The parties both ask the Court to revisit its MTD Order. Ranney requests the Court revisit its decisions to not dismiss the case and not issue an adverse jury instruction. Def.'s Mot. at 2; Def.'s Reply at 10 (ECF No. 132). And the Government requests the Court revisit its finding of a *Brady* violation. Gov't's Mot. at 4–5.

The parties' Motions turn largely on the Government's alleged suppression of evidence. In its MTD Order, the Court found that the Government's suppression of documents showing that Federal Protective Service ("FPS") Inspector Stephen Glumaz's decertification was due in part to the August 8 incident constituted a *Brady* violation. MTD Order at 4–6. The Court further found that the Government's failure to produce "the case files for the two use of force incidents, the formal use of force memo for the August 8 incident, and the OIG materials for the August 8 and 20 incidents" constituted an ongoing *Brady* violation. *Id.* at 4–6, n.1.

#### 1. Materials Not Considered In The Court's MTD Order

The Government has produced the following materials to Ranney that were not considered by the Court in its MTD Order. On July 26, 2026, shortly before the Court issued the MTD Order, Ranney received more materials regarding Glumaz. Def.'s Mot. at 1–2. One document is a "Training History Report" for Glumaz from the FPS Training and Academy Management System ("TAMS"). *Id.* at 2:12–3:3; *see* Declaration of Angela Chuang ("Chuang Decl.") (ECF No. 113), Ex. E ("TAMS Report") (ECF No. 114-3). The TAMS Report lists an "FN303 Firearms

Qualification" for Glumaz that expired on June 13, 2024, and is listed as "Expired" status. TAMS Report at 2. Another document is a "Report of Investigation" ("ROI") by the Department of Homeland Security Office of Inspector General ("DHS OIG") regarding an investigation into an incident in 2007, where Glumaz was involved in an off-duty shooting. Def.'s Mot. at 3:4–4:17; *see* Chuang Decl., Ex. D ("2007 ROI") (ECF No. 114-2). The 2007 ROI states that Glumaz was investigated for carrying a personally-owned concealed firearm while off-duty, that Glumaz "resigned from FPS while under investigation," and that DHS OIG "found that FPS policy did not authorize Glumaz to carry any weapon, government-owned or personally-owned, off-duty." 2007 ROI at 1. The ROI further states that DHS OIG interviewed "Timothy Rivero, Special Agent (SA)," regarding Glumaz's "firearms qualifications records" and "Bridget Martin," an AUSA in the Northern District of California, "regarding the shooting incident involving Glumaz."[2] *Id.* at 4. AUSA Cohen "informed the defense by email that Inspector Glumaz had lied to the government when filling out the Giglio questionnaire for this case" because Glumaz "'answered in the negative' to a question about 'whether he had ever resigned from a law enforcement job while an investigation of him was pending.'" Def.'s Mot. at 4:12–17; *see* Chuang Decl., Ex. A (Email) (ECF No. 113-1). AUSA Cohen avers that FPS Senior Special Agent Timothy Rivero "was not present" when Glumaz conveyed "that he had not resigned while under investigation." Gov't's Sur-Reply at 6:15–25 (ECF No. 143-3) (citing Sur-Reply Declaration of Eli J. Cohen ("Cohen Sur-Reply Decl.") ¶ 9 (ECF No. 143-5)).

On July 27, 2026, Ranney received an additional document regarding Glumaz. Gov't's Opp. at 3:12–19 (ECF No. 127); Def.'s Reply at 2:6–14. The document is from FPS's Firearms, Armor and Credentials Tracking System ("FACTS") and states that Glumaz has "Qualification" for "Fabrique D'Armes De Guerre De / 303" on August 8, 2025, and "Training" for "FPS - FN303 Certification" on September 17, 2024. *See* Declaration of Eli J. Cohen ("Cohen Decl.") ¶ 2 (ECF No. 127-1), Ex. A ("FACTS Report") (ECF No. 128-2).

On August 7, 2026, Ranney received additional materials regarding Glumaz. Def.'s Reply

[2] "Bridget" is an incorrect spelling of "Brigid." Def.'s Mot. at 4 n.6.

United States District Court
Northern District of California

at 6:6–17. One document is an OIG Complaint made by Director of Specialized and Advanced Training, Michael O. Wells, against Glumaz, concerning Glumaz's use of "less lethal launchers." *See* Reply Declaration of Angela Chuang ("Chuang Reply Decl.") (ECF No. 133), Ex. G ("OIG Complaint") (ECF No. 134-2). Wells stated that the Complaint was not made "as a routine referral from a DHS internal affairs agency," and that Glumaz "[d]isplayed a significant lack of understanding of the proper lawful utilization of less lethal launchers and an inadequate articulation of the circumstances and rationale for their use, as required by policy." *Id.* Another document is an Enforcement Data System ("EDS") Report that states that the OIG Complaint is associated with an "Incident Date" of August 8, 2025, and that the complainant believes "[t]he office needs to investigate to see if Inspector Glumaz did/did not follow policy with the use of his FN303 Pepperball launcher." *See* Chuang Reply Decl., Ex. H ("Glumaz EDS Report") (ECF No. 134-3).

Ranney also received materials regarding FPS Inspector Joseph Orchard and FPS District Commander Scott Hall on August 7. Def.'s Reply at 6:17–8:1. One document is an EDS Report that is identical to the Glumaz EDS Report but that names Orchard as a subject of the OIG Complaint. *See* Chuang Reply Decl., Ex. K ("Orchard EDS Report") (ECF No. 134-5). Another document is an EDS Report regarding Hall. *See* Chuang Reply Decl., Ex. J ("Hall EDS Report") (ECF No. 134-4). The Hall EDS Report states that a complaint was made against Hall by a person who was on-duty during an incident on August 3, 2018; the complainant stated that upon drafting an official report about the incident, Hall "demanded that [the complainant] remove specific information" that "depicted articulable facts which were exculpatory forms of evidence." Hall EDS Report at 1. The Hall EDS Report also states that a complaint was filed against Hall on July 22, 2025, for Hall's "poor/improper management practices"; the complaint states that Hall was aware that a proper inventory of an evidence locker was not conducted "and failed to take appropriate action," resulting in improper evidence destruction. *Id.* at 7.

Ranney also received materials regarding ICE agents' text messages on August 7. Def.'s Reply at 8:2–9:13. One document is an email chain showing the Government reached out to agencies on July 23, 2026, to obtain any text messages from individuals present at the protest on

United States District Court
Northern District of California

August 8, 2025, that relate to the protests on August 8 and 20, 2025. Chuang Reply Decl., Ex. I (ECF No. 133-4). The email chain shows that ICE responded to the text message request, stating: "iPhones were just upgraded for everyone, all our texts did not transfer over." *Id.* And an email from Deportation Officer Michael A. Caldwell, Jr. states: "I was there as I arrested the individual. I have no records from that far back due to the iPhone Upgrade that I can currently find." *Id.* AUSA Cohen avers that the Government requested text messages from ICE agents and FPS officers on June 1, 2026, regarding the incident on August 8, 2025. Cohen Sur-Reply Decl. ¶ 10. ICE counsel responded with information regarding eleven ICE officers; at least three officers performed phone upgrades prior to June 1, 2026, and at least three officers do not have back-ups. Cohen Sur-Reply Decl., Ex. E (ECF No. 142-7).

On August 18, 2026, Ranney received the final FPS Use of Force Review Committee's memo regarding Glumaz's use of force on August 8, 2025. Gov't's Sur-Reply at 2:13–3:2; Def.'s Sur-Sur-Reply at 3:7–12 (ECF No. 151); *see* Cohen Sur-Reply Decl., Ex. C ("FPS Memo") (ECF No. 143-8). The FPS Memo concludes that on August 8, 2025, "Glumaz's specific FN 303 deployment was not consistent with FPS policy and training," Glumaz's "report did not articulate the specific threat justifying each trigger press," and Glumaz's "documentation did not establish that a warning was provided or explain why a warning was not feasible." FPS Memo at 4. The Memo recommends suspension of "Glumaz's authorization to deploy the FN 303, consistent with applicable FPS certification authority, until he successfully completes remedial training and recertification." *Id.* Further, the Government proffers a declaration from FPS Division Director, Brent Cotton, stating that Glumaz was certified as an FN 303 operator on August 8, 2025. Cohen Sur-Reply Decl., Ex. D ("Cotton Decl.") ¶ 8 (ECF No. 142-6).

On August 28, 2026, Ranney received materials regarding Rivero. Def.'s Sur-Sur-Reply at 1 n.1. One document is the Government's disclosure stating that [redacted]. Declaration of Samantha Jaffe ("Jaffe Decl.") (ECF No. 151-1), Ex. N (ECF No. 152-1). [Redacted]. *Id.* at 2. Another document is [redacted]. *Id.* at 3.

**2. Relevant Pretrial Matters**

On December 19, 2025, the Court issued an order stating: "Pursuant to the Due Process

Protection Act, the Court advised government counsel of the government's disclosure obligations under *Brady v. Maryland* and its progeny, and that the failure to do so in a timely manner may result in dismissal of the indictment or information, dismissal of individual charges, exclusion of government evidence or witnesses, or any other remedy that is just under the circumstances." ECF No. 2. Starting that day, defense counsel began requesting such material. ECF No. 95-6 at 4–5. The Court ordered the Government to disclose any *Brady/Giglio/Jencks* material by June 10, 2026. ECF No. 21.

The parties filed proposed witness lists and exhibit lists on June 24, 2026. ECF Nos. 27, 28, 35, 36. The Government's witness list includes Orchard and Rivero as prospective witnesses. ECF No. 36. Rivero is the Government's designated case agent in this case. ECF No. 37 at 6; ECF No. 43 at 1. The Government's exhibit list includes (1) an incident report for August 8 signed by Hall as the "Supervisor"; and (2) CVB tickets issued to Ranney for the August 8 incident, signed by Orchard. *See* ECF No. 35 at Exs. 13, 16. On July 9, 2026, the defense subpoenaed Glumaz as one of their witnesses. ECF No. 95 ¶ 5. The defense has also subpoenaed Hall as one of their witnesses. Gov't's Sur-Reply at 4:9–10. On July 22, 2026, the Government filed its revised exhibit list. ECF No. 85. The revised exhibit list includes (1) a witness interview summary from May 20, 2026, for Glumaz where Glumaz "stated that DC Hall ordered him, 'Go ahead and shoot'"; and (2) a witness interview summary from July 17, 2026, for Hall where Hall stated he "instructed Inspector Glumaz to stop the people from getting inside and breaching the facility since facility is level 4." *See id.* at Exs. 73, 77.

On July 9, 2026, the Court issued an order on the parties' motions *in limine*. ECF No. 74. The Court denied the Government's request to preclude Ranney from presenting a defense of self-defense; instead, the Court concluded that it should defer ruling on whether to give a jury instruction on self-defense and/or defense-of-others until the close of evidence. *Id.* at 10.

On July 23, 2026, the Court held a final pretrial hearing with the parties. At the hearing, Ranney moved to dismiss the case based on the Government's late disclosure of *Brady* material regarding Glumaz's decertification because of the August 8 incident. ECF No. 93 at 3–4 (Hearing Transcript from 7/23/26).

**B. Procedural Background**

On December 5, 2025, the Government filed an Information charging Ranney with Assault on a Federal Officer (Count 1), alleging Ranney

> forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with a person designated in 18 U.S.C. § 1114, to wit: Immigration and Customs Enforcement Deportation Officer Victim One, an officer and employee of the United States and of any agency in any branch of the United States Government, while he was engaged in and on account of his performance of official duties, all in violation of Title 18, United States Code, Section 111(a)(1).

ECF No. 1. The Government also charged Ranney with Destruction of Government Property (Count 2), alleging Ranney

> willfully injured and committed a depredation against property of the United States and of any department and agency thereof, specifically a sally port located on the Jackson Street side of the building at 630 Sansome Street in San Francisco, California, causing damage in an amount less than $1,000, all in violation of Title 18, United States Code, Section 1361.

*Id.* The Government alleges that Ranney committed these two offenses "[o]n or about August 8, 2025, in the Northern District of California." *Id.* On December 19, 2025, Ranney was arraigned and entered a plea of not guilty on both Counts of the Information. ECF No. 2.

Trial was originally set for July 27, 2026. ECF No. 21. The Court ordered the Government to disclose any *Brady/Giglio/Jencks* material by June 10, 2026. *Id.* On July 23, 2026, Ranney filed a Motion to Dismiss based on the Government's alleged *Brady* violations. ECF No. 94. Ranney requested further discovery and a jury instruction regarding the Government's misconduct as alternatives to dismissal. *Id.* On July 26, 2026, the Court denied Ranney's Motion to Dismiss, found that a *Brady* violation occurred, and continued the trial date. ECF No. 111 (the "MTD Order"). The case is now set to proceed to jury trial on October 5, 2026. ECF No. 116.

On July 26, 2026, Ranney filed his instant Motion for Leave to File Motion for Reconsideration and Motion for Reconsideration. ECF No. 112 ("Def.'s Mot."). On August 7, 2026, the Government filed an Opposition to Ranney's Motion. ECF No. 127 ("Gov't's Opp."). On August 14, 2026, Ranney filed a Reply to his Motion. ECF No. 132 ("Def.'s Reply"). On

August 22, 2026, the Government filed a Sur-Reply.[3] ECF No. 143-3 ("Gov't's Sur-Reply"). On August 31, 2026, Ranney filed a Sur-Sur-Reply. ECF No. 151 ("Def.'s Sur-Sur-Reply").

On August 7, 2026, the Government filed its instant Motion for Leave to File Motion for Reconsideration (ECF No. 129) ("Gov't's Mot.") and Motion for Reconsideration (ECF No. 130-2). On August 24, 2026, Ranney filed an Opposition to the Government's Motion.[4] ECF No. 146-1 ("Def.'s Opp."). On August 31, 2026, the Government filed a Reply to its Motion.[5] ECF No. 154-3 ("Gov't's Reply").

## III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a court may revise any interlocutory order at any time prior to entering final judgment. Fed. R. Civ. P. 54(b). However, reconsideration of a prior ruling is an "extraordinary remedy, to be used sparingly." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id.* The decision to reconsider a prior ruling lies within the district court's discretion. *Horner v. Keystone Am., Inc.*, 452 F. App'x 712, 713 (9th Cir. 2011).

The Civil Local Rules require that a party seeking leave to file a motion for reconsideration show reasonable diligence in making the motion and one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law

[3] The Government filed its Sur-Reply under seal. *See* ECF No. 143-3. The Government filed a redacted version of the Sur-Reply on the public docket. *See* ECF No. 142-1.

[4] Ranney filed his Opposition under seal. *See* ECF No. 146-1. Ranney filed a redacted version of the Opposition on the public docket. *See* ECF No. 145.

[5] The Government filed its Reply under seal. *See* ECF No. 154-3. The Government filed a redacted version of the Reply on the public docket. *See* ECF No. 153.



United States District Court
Northern District of California

> at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L.R. 7-9(b). "No motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." *Id.* at 7-9(c).

## IV. DISCUSSION

Ranney seeks leave to file a Motion for Reconsideration based on material developments since the Court issued its MTD Order—the Government's late disclosure of additional exculpatory evidence it had previously withheld. Def.'s Mot. at 1. In his Motion for Reconsideration, Ranney argues that dismissal is warranted; alternatively, Ranney seeks sanctions for the Government's "pattern of misconduct in this case." *Id.* at 2; Def.'s Reply at 10. The Government seeks leave to file a Motion for Reconsideration based on the Court's "failure to 'consider material facts or dispositive legal arguments' previously before the Court," which resulted in the Court's misapplication of the relevant legal standard in determining that a *Brady* violation occurred. Gov't's Mot. at 1–2.

In sum, the Court concludes that Ranney establishes that leave to file a Motion for Reconsideration is warranted, and that the Government fails to establish that leave to file a Motion for Reconsideration is warranted. The Court further concludes that it should reconsider its prior ruling denying Ranney's request for an adverse jury instruction.

### A. Ranney's Motion

#### 1. Leave To File Motion For Reconsideration

Ranney argues that the Court should grant his Motion for Leave to File Motion for Reconsideration based on new evidence the Government suppressed which demonstrates that the Government's "pattern of *Brady* violations is even more extensive and flagrant than the Court" previously understood. Def.'s Mot. at 2. The Government contends that the Court should deny Ranney leave because he does not "demonstrate that any *material* difference in fact or law has

emerged since the Court's order (or was previously unknown)." Gov't's Opp. at 1–2 (emphasis in original).

Here, the Court finds that Ranney establishes a material difference in fact from what existed when the Court issued its MTD Order and that new material facts have emerged after the Court issued that Order. *See* Civ. L.R. 7-9(b)(1)–(2). The Government argues that the newly-disclosed information is "neither materially different from the facts known to the Court before their disclosures, material to any defense theory, or even favorable under *Brady*." Gov't's Opp. at 3:5–5:4. However, the Government does not dispute that it disclosed new materials to Ranney which were not presented to the Court in the briefing for the MTD Order, or that it produced new materials to Ranney after the Court issued that Order. Nor does the Government dispute that the materials relate to persons who were present at the incident on August 8, 2025, or who are witnesses testifying for the Government. In short, the existence of the newly-disclosed materials creates a material difference in fact from when the Court issued its MTD Order as the volume of previously undisclosed evidence has increased. And because the materials disclosed after the Court issued its Order pertain to fact witnesses and evidence from the August 8 incident, they are new material facts. Further, the Government's argument that the new evidence does not constitute *Brady* material goes to the merits of Ranney's Motion and whether the Court should reconsider its decision to not dismiss the case, not whether the Court should consider Ranney's Motion based on the Government's alleged misconduct. Therefore, Ranney establishes that leave to file a Motion for Reconsideration is warranted.

Accordingly, the Court **GRANTS** Ranney's Motion for Leave to File Motion for Reconsideration.

**2. Motion For Reconsideration**

Ranney argues that the Court should reconsider its decisions to not dismiss the case and not give an adverse jury instruction in light of the Government's additional *Brady* violations. Def.'s Mot. at 2; Def.'s Reply at 10. The Government contends that even if the Court maintains its finding that the Government breached its obligations under *Brady*, the Court should deny Ranney's Motion because "the Court's ordered continuance remains the appropriate remedy."

Gov't's Opp. at 5:5–11.

**a. *Brady* Analysis**

The parties disagree on whether the Government's delayed disclosure of new materials constitute *Brady* violations.

In the landmark case of *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "In *Giglio v. United States*, the Court further clarified that nondisclosure of evidence that would impeach the credibility of a key witness 'falls within this general rule.'" *United States v. Cloud*, 102 F.4th 968, 975 (9th Cir. 2024) (citing 405 U.S. 150, 154 (1972)). The Court has counseled that a due process violation under *Brady* "has three components: (1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the government, either willfully or inadvertently; and (3) prejudice must have ensued."[6] *Id.* (cleaned up).

Here, as discussed below, the Court finds that additional *Brady* violations have occurred since the Court issued its MTD Order.

**i. Suppression By The Government**

"Evidence is suppressed where it is known to the State and not disclosed to the defendant." *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) (cleaned up). "As a matter of law, the prosecution is deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *Id.* (citation omitted). "The State's duty to disclose is affirmative; it applies even though there has been no request by the accused." *Id.* (cleaned up).

Here, the Court finds that the Government suppressed evidence. Except for the FPS Memo (which the Government received on August 18, 2026), the Government does not dispute that the

[6] In this order, the Court refers to evidence under *Brady* and *Giglio* collectively as *Brady* evidence.

newly-disclosed materials were suppressed withing the meaning of *Brady*. *See* Gov't's Sur-Reply at 2:13–24 ("It should go without saying that [the FPS Memo] was not suppressed."). Nor could it. While the Government indicates that it received some materials late from federal agencies, evidence not timely disclosed by those federal agencies is suppressed within the meaning of *Brady*. *E.g.,* Gov't's Opp. at 6:28–7:11; *see Comstock*, 786 F.3d at 709 ("To satisfy its duty, the State must disclose evidence known to the prosecutor as well as evidence known only to police investigators and not to the prosecutor. Thus, the prosecutor has an obligation to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.") (cleaned up). As the newly-disclosed materials were not produced until the day before trial was originally scheduled to start, or after that date, that evidence was undoubtedly suppressed within the meaning of *Brady*.

**ii. Favorability**

"Evidence is favorable to the accused for *Brady* purposes if it is either exculpatory or impeaching." *Comstock*, 786 F.3d at 708 (cleaned up). Evidence "is favorable to a defendant even if its value is only minimal." *Id.*

Here, the Court finds that the suppressed evidence is favorable to Ranney. First, the evidence regarding Glumaz and Hall is clearly exculpatory. There is no dispute that Glumaz and Hall were present at the protest on August 8, 2025, and that they were involved in the use of force against protestors—Glumaz fired the FN 303 multiple times and Hall gave Glumaz the order to shoot. Def.'s Reply at 7:3–17; *see* ECF No. 85 at Exs. 73, 77. Any evidence that Glumaz's use of force was improper is exculpatory as it supports Ranney's self-defense defense. *See* MTD Order at 4. The same is true for any evidence that Hall's command to Glumaz to use force was improper. As such, the TAMS Report showing that Glumaz's FN 303 certification expired on June 13, 2024; the 2007 ROI showing that Glumaz was not permitted to carry a concealed firearm when he was involved in an off-duty shooting; the Glumaz EDS Report showing that a supervisor filed an OIG Complaint against Glumaz for his use of force on August 8; and the Hall EDS Report showing that complaints were filed against Hall for his ordering a subordinate to improperly remove exculpatory information from an incident report and his "poor/improper management

United States District Court
Northern District of California

practices" are exculpatory as they bear on whether Glumaz used unlawful force and whether Hall's command to Glumaz to use force was improper. *See* Def.'s Reply at 3–7. In addition, because the Government must prove the absence of self-defense, evidence showing that officers used improper force is favorable to Ranney as it could cast doubt on the Government's case. *See Comstock*, 786 F.3d at 708 ("If information would be advantageous to the defendant, or would tend to call the government's case into doubt, it is favorable.") (cleaned up).

The Government hangs its hat on the fact that Glumaz and Hall are "defense witnesses"; thus, according to the Government, it has no duty to disclose "impeachment evidence" for these two officers. *See* Gov't's Opp. at 4:6–21 ("But such derogatory effect on [Glumaz's] credibility has no bearing on the government's case as he is at most a defense witness."); Gov't's Sur-Reply at 4:9–10 ("To the extent the 2018 DHS-OIG allegation is potential impeachment material for Hall, a defense witness, it is not subject to the government's disclosure obligations under *Brady*."). But that ignores the fact that Glumaz and Hall are fact witnesses who were part of the coordinated team of federal officers that acted during the protest on August 8 *and* are two officers who used force against protesters. Simply put, evidence undermining the credibility of key fact witnesses *is* exculpatory evidence. *See* Def.'s Sur-Sur-Reply at 1:8–19 ("[Glumaz and Hall's] testimony, and therefore their credibility, go to what happened that day and whether [Ranney] acted in self-defense."). In this case, the credibility of any officer on the team of officers who interacted with protesters on August 8 could affect the jury's perception of whether the team's use of force was unlawful and thus whether self-defense was justified under the circumstances. To that end, the fact that Glumaz lied to Government counsel regarding whether he resigned from a law enforcement job while under investigation is exculpatory evidence, not merely "useful to impeach Glumaz's testimony." Gov't's Opp. at 4:6–8; *see* Def.'s Mot. at 4:12–17. A jury could find that if Glumaz lied in the past, he may lie about his use of force on August 8 and whether it was appropriate; a jury could also interpret Glumaz's dishonesty as tainting the team. Def.'s Reply at 5:15–6:5.

The Government also argues that certain materials are not favorable because they have limited value. For example, the Government asserts that (1) the TAMS Report showing that

Glumaz's FN 303 certification expired prior to August 8 is not favorable because the FACTS Report shows that Glumaz was certified on that date; and (2) the Hall EDS Report showing that a subordinate complained that Hall improperly demanded that he remove exculpatory evidence is not favorable because "the veracity of the complaint, the propriety or impropriety of the alleged instruction, and the outcome of the inquiry are unknown." Gov't's Opp. at 6:21–27; Gov't's Sur-Reply at 4:9–20. But "it is not the role of the prosecutor to decide that facially exculpatory evidence need not be turned over because the prosecutor thinks the information is false or has diminished probative value." *Cloud*, 102 F.4th at 977 (cleaned up). The TAMS Report and Hall EDS Report are facially exculpatory—they give rise to an inference that Glumaz was not certified to operate the FN 303 on August 8 and that Hall has a history of ordering officers to take actions that are improper. Def.'s Mot. at 2:21–3:3; Def.'s Reply at 3:25–4:4.

Moreover, by the Government's own standard, it is obligated to turn over "impeachment evidence" for Hall as he is a "non-testifying hearsay declarant" for the Government. Gov't's Opp. at 4:8–21. Indeed, on June 24, 2026, and July 22, 2026, the Government disclosed that it planned to use an incident report from August 8 bearing Hall's signature. *See* ECF No. 35 at Ex. 13; ECF No. 85 at Ex. 13. That the Government now decides it "is not relying on those reports or seeking to have any statements from those reports admitted into evidence at trial in order to prove the charges" is immaterial. Gov't's Sur-Reply at 4:17–20. Because the Government alerted Ranney that it planned on using the incident report signed by Hall at trial, the Government had a duty to disclose impeachment evidence relating to Hall. *See* Def.'s Reply at 7:14–17 ("The fact that [Hall] previously forced a subordinate to unlawfully remove exculpatory information from an official report calls into question the accuracy and integrity of every record/report generated in [Ranney's] case.").

As to Orchard and Rivero, they are testifying witnesses for the Government, so the Government has a duty to turn over any impeachment material for these two individuals. ECF No. 36. There is no doubt that the Orchard EDS Report and Government's disclosure regarding Rivero—showing that a complaint was made against Orchard for the August 8 incident and that Rivero [redacted]—could potentially be used to impugn the credibility of those two witnesses and

thus should have been disclosed much sooner. Def.'s Reply at 6:17–7:2; Def.'s Sur-Sur-Reply at 1 n.1. Further, that Glumaz's resignation was known to Rivero could make Rivero look dishonest as a reasonable inference is that Rivero withheld this information from the Government. Def.'s Reply at 5:1–14. In addition, the fact that Glumaz's 2007 investigation was known to "the very US Attorney's Office prosecuting" this case (a fact the Government does not grapple with) makes the Government's non-disclosures regarding the investigation and subsequent lie by Glumaz even more concerning. Def.'s Mot. at 5:27–6:12; Def.'s Reply at 5:1–14.

Finally, the fact that ICE admits that text messages relating to the August 8 and August 20 protests "did not transfer over" when agents' phones were upgraded is favorable to Ranney. Chuang Reply Decl., Ex. I; *see* Def.'s Reply at 8:2–9:13. The Government thus should have disclosed that fact to Ranney much sooner.

**iii. Materiality**

The Ninth Circuit's *Brady* case law uses "prejudice" and "materiality" interchangeably. *Cloud*, 102 F.4th at 979. The analysis for this element differs depending on whether the suppressed evidence is "discovered before or during trial" or is "discovered *after* a trial and conviction." *Id.* (emphasis in original). The "proper test for pretrial disclosure of exculpatory evidence should be an evaluation of whether the evidence is favorable to the defense, i.e., whether it is evidence that helps bolster the defense case or impeach the prosecutor's witnesses." *Id.* (citation omitted). In that case, "the materiality inquiry should evaluate the relative value of the withheld evidence on the basis of the indictment, the pretrial proceedings, the opening statements, and the evidence introduced up to that point." *Id.* at 980 (cleaned up). Courts may also "consider whether, had the evidence been timely disclosed, it might have altered the prosecution or defense strategy." *Id.* Further, a court must consider newly-disclosed information collectively in determining whether a *Brady* violation occurred. *United States v. Kohring*, 637 F.3d 895, 898, 902 (9th Cir. 2011); *see Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that when assessing materiality, a court must consider suppressed evidence, "collectively, not item by item").

Here, the Court finds that the Government's suppression prejudiced Ranney under the materiality standard applicable to withheld evidence discovered before or during trial. As

discussed, the suppressed evidence is favorable to Ranney; thus, his not having it is prejudicial to him. *See* MTD Order at 5; *Cloud*, 102 F.4th at 979. Collectively, the evidence concerns two officers involved in the use of force on August 8 (Glumaz and Hall), one officer who cited Ranney and is testifying for the Government (Orchard), the Government's case agent (Rivero), and missing text messages regarding the August 8 incident. *Kohring*, 637 F.3d at 898. The evidence as a whole could strengthen Ranney's self-defense defense and weaken the Government's case by revealing multiple credibility issues. As such, "[e]ven the Government might have altered its strategy had it timely disclosed" the suppressed evidence by realizing "that it might be difficult to pursue the case it had promised in the [information]" given that the evidence bears on whether the Government can prove the absence of self-defense. *Cloud*, 102 F.4th at 981 (cleaned up). This bolsters the conclusion that Ranney's not having the suppressed evidence prejudiced him.

The Government argues that Ranney has not been prejudiced by any late disclosures and in fact benefits from the continuance resulting from the Government's initial *Brady* violation because Ranney "now has the benefit of a document that did not exist before August 18, 2026, and that is helpful to his theory." Gov't's Sur-Reply at 10:18–11:4. "For more than sixty years, *Brady* has treated suppression of material evidence favorable to the accused as a bedrock principle of due process." *Cloud*, 102 F.4th at 981. The Court therefore declines the Government's invitation to excuse its evidence suppression because it was discovered *too early*, at a time when Ranney can still use the suppressed evidence at trial. "This argument, if taken to its logical extreme, could risk preventing a trial judge from imposing *any* forward-looking *Brady* sanction under the rationale that there can be no due process violation unless and until the court permits the government's concealment of evidence to fatally taint the trial's result." *Id.* (emphasis in original). In sum, Ninth Circuit precedent forecloses that argument. *Id.*

**b. *Brady* Remedy**

Ranney argues that dismissal is warranted due to the Government's flagrant misconduct and need to deter "future illegal conduct." Def.'s Mot. at 6:13–7:28. He further argues that if the Court does not dismiss the case, the Court should issue alternative sanctions by granting "an adverse-inference jury instruction" and precluding the Government "from adding witnesses and

United States District Court
Northern District of California

exhibits beyond what was disclosed as of July 27, 2026," to remedy prejudice caused by the Government's misconduct.[7] Def.'s Reply at 10–13. The Government contends that a continuance is the appropriate course of action. Gov't's Opp. at 5:5–11; Gov't's Sur-Reply at 10:18–4.

"District courts have discretion in shaping the remedies for *Brady* and *Giglio* violations." *United States v. Garrison*, 888 F.3d 1057, 1065 (9th Cir. 2018). However, "[a] court may dismiss an [information] under its supervisory powers only when the defendant suffers substantial prejudice, and where no lesser remedial action is available." *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) (cleaned up).

Here, the Court concludes that dismissal is not warranted because a lesser remedial action is available. To be sure, Ranney has been prejudiced by the Government's repeated *Brady* violations as he has "lost the element of surprise" and "has spent countless hours litigating these matters." Def.'s Reply at 13:6–14. But "[b]ecause it is a drastic step, dismissing an [information] is a disfavored remedy." *United States v. Struckman*, 611 F.3d 560, 577 (9th Cir. 2010) (citation omitted). The Court thinks that the adverse jury instruction proposed by Ranney will cure the prejudice. *See* Def.'s Reply at 12 n.10 (citing *Garrison*, 888 F.3d at 1063 n.3); *Garrison*, 888 F.3d at 1061 (concluding adverse jury instruction appropriate where "[b]efore and during trial, the government made grave mistakes in its prosecution of the case by repeatedly failing to timely disclose information to the defense, as was required by law"). Unlike when the Court issued its MTD Order, it appears that the scope of the missing *Brady* evidence is now known and will be available to Ranney at trial. *See* MTD Order at n.1; *Garrison*, 888 F.3d at 1065–66 (concluding that trial court did not err in declining to dismiss indictment and instead gave "a jury instruction telling the jury that the government had disclosed evidence late and that the jury could draw adverse inferences from that late disclosure" where "[a]ll of the late disclosed evidence . . . was given to the jury"). Therefore, the Court will issue the following jury instruction at trial:

---

[7] Ranney also requests the Court order the Government to produce certain things. Def.'s Reply at 13–14. The Court will issue a separate order regarding any outstanding discovery pursuant to the parties' joint letter briefs. *See* ECF Nos. 144, 147, 148. Further, based on the parties' description of the outstanding discovery, the Court does not think that the outstanding discovery affects the Court's resolution of the instant Motions.

> Under the United States Constitution, in order for the defendant to receive a fair trial, the Government must inform the Defense of any information known to the Government that tends to suggest the defendant might not have committed the crimes or crime charged and any information that casts doubt on the credibility of the Government's own evidence. In this case, the Government violated those important Constitutional principles upon which the fair administration of our system of justice depends on multiple occasions. In evaluating the merits of this case, you can decide what weight, if any, to give to the Government's violations of these Constitutional principles. The Government's actions standing alone or in combination with other facts presented in this case, may create a reasonable doubt in your mind about the defendant's guilt.

*Cf. Garrison*, 888 F.3d at 1063 n.3; *see also* Ninth Cir. Model Crim. Jury Instr. 3.20 (Untimely Disclosure of Exculpatory or Impeachment Evidence).

Finally, Ranney requests that the Court sanction the Government by precluding the Government "from adding witnesses and exhibits beyond what was disclosed as of July 27, 2026." Def.'s Reply at 13:6–14. The Court does not think that this request is improper. However, such a sanction is unnecessary. The Court ordered the Government to disclose its witness and exhibit lists to Ranney by June 24, 2026. ECF No. 21. And the Government filed its revised exhibit list on July 22, 2026. ECF No. 85. The Court has not granted the Government permission to introduce late-disclosed witnesses or exhibits at trial. Therefore, as it stands now, the Government is already precluded from adding witnesses and exhibits to what was disclosed.

Accordingly, the Court **GRANTS** Ranney's Motion to reconsider whether to issue an adverse jury instruction at trial. The Court **DENIES** Ranney's Motion to reconsider whether to dismiss the case and **DENIES** Ranney's request for a sanction precluding the Government from adding new witnesses and exhibits.

### B. Government's Motion

The Government argues that the Court should grant its Motion for Leave to File Motion for Reconsideration because the Court failed "to 'consider material facts or dispositive legal arguments' previously before the Court" in determining that a *Brady* violation occurred. Gov't's Mot. at 1–2. Ranney contends that the request for leave is improper because the Government has not made out a proper basis for a reconsideration motion, and the Government "repeats its original arguments in opposition to [Ranney's] *Brady* motion, in violation of the rules governing motions

to reconsider." Def.'s Opp. at 1:1–18.

Here, the Court finds that the Government fails to establish that the Court failed to consider material facts or dispositive legal arguments previously before the Court in determining that a *Brady* violation occurred. *See* Civ. L.R. 7-9(b)(3). "A motion for reconsideration is not a vehicle for perpetually relitigating the Court's rulings, or a substitute for appeal." *Feamster v. Gaco W., LLC*, No. 18-cv-01327-HSG, 2019 WL 4305536, at *1 (N.D. Cal. Sept. 11, 2019). But that is exactly what the Government seeks to do. *See* Def.'s Opp. at 4:11–12 ("The government's motion for reconsideration makes it crystal clear that the motion is simply a restatement of its initial arguments as to favorability and prejudice.").

First, the Government argues that the Court "did not properly apply the relevant legal standard to the facts and arguments before the Court" in assessing materiality because the Court "conflated the favorability and materiality standards." Gov't's Mot. at 3:4–6. At bottom, the Government takes issue with the Court's evaluation of the factual record concerning the Government's late disclosure of evidence. In its Motion, the Government repeats its argument from that raised in opposition to Ranney's Motion to Dismiss: a court's materiality analysis can consider "whether the late disclosure 'might have altered the prosecution or defense strategy." *Compare id.* at 3:4–18 *with* ECF No. 104 at 12 (Gov't's Opposition to Ranney's Motion to Dismiss); *see* Def.'s Opp. at 6:12–18. The Government must identify "dispositive legal arguments" not considered by the Court. Civ. L.R. 7-9(b)(3). It is unclear why the Government asserts that a permissive standard is tantamount to a dispositive legal argument. Further, the fact that the MTD Order did not expressly discuss every legal contention does not establish that the Court failed to consider them.

Second, the Government argues that the Court did not properly apply the relevant law in assessing favorability because the Court's analysis reflects "a more expansive view of what constitutes favorable evidence under *Brady* than is supported by the case law." Gov't's Mot. at 4:11–13. Again, the Government takes issue with the Court's conclusions drawn from the factual record. In its Motion, the Government repeats its contention that "impeachment material pertaining to" Glumaz cannot be "favorable under *Brady*" because "Glumaz is a defense witness."

United States District Court
Northern District of California

*Compare id.* at 4:11–26 *with* ECF No. 104 at 9–10; *see* Def.'s Opp. at 5:15–6:11. The Government does not explain why the Court was required to determine the "impeachment" value of evidence in the MTD Order when the Court found that the evidence was exculpatory because it supports Ranney's theory of self-defense. MTD Order at 4. Moreover, even had the Court found that the evidence is favorable under *Brady* because it could be used to impeach Glumaz, the Government's Motion does not identify any controlling Ninth Circuit authority demonstrating that the Court applied an incorrect legal standard. *See* Def.'s Opp. at 4:11–24. Therefore, because the Government seeks to relitigate issues the Court has already resolved, the Government fails to establish that leave to file a Motion for Reconsideration is warranted.

Accordingly, the Court **DENIES** the Government's Motion for Leave to File Motion for Reconsideration.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Ranney's Motion for Leave to File Motion for Reconsideration, **GRANTS IN PART and DENIES IN PART** Ranney's Motion for Reconsideration, and **DENIES** the Government's Motion for Leave to File Motion for Reconsideration.

**IT IS SO ORDERED.**

Dated: September 9, 2026

THOMAS S. HIXSON
United States Magistrate Judge